## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

DIANE LEONE,
          - Plaintiff


          v.                          CIVIL NO. 3:05-CV-521 (CFD)(TPS)


C. FISHER,
          - Defendant

## Ruling on Defendant's Motion to Compel

This is a false arrest action brought pursuant to 42 U.S.C. § 1983.  The plaintiff, Diane Leone, asserts that she was arrested by the defendant, a Town of Windsor Police Officer, even though the defendant knew that Leone had been previously arrested by West Hartford Police for the same conduct.  (Compl. ¶¶ 1, 12-17.) Presently before the court is defendant's Motion to Compel Compliance with a *Subpoena Duces Tecum* issued to non-party witness Peter Gersten, Esq.  The motion **[Dkt. #25]** is **GRANTED** in part and **DENIED** in part.

## I.   Facts

In 2002 Leone was enrolled in a teaching program at Central Connecticut State University ("CCSU").  (Compl. ¶ 5.)  As part of that program, Leone was assigned to student teach at John F. Kennedy Elementary School in Windsor, Connecticut.  (<u>Id.</u>)  Leone's

supervising teacher was Carol Giardi.  (Id.)  The relationship between Leone and Giardi was apparently quite contentious and resulted in Leone leaving CCSU.  (Compl. ¶ 6.)

The conflict between the Plaintiff and Giardi apparently escalated and culminated when Giardi allegedly complained to the West Hartford Police that Leone was making harassing phone calls to her house.  (Compl. ¶¶ 7,8.)  Leone was arrested by West Hartford Police on the basis of this complaint.  It is further alleged that the day after plaintiff's arrest by West Hartford Police, she was arrested by the defendant Windsor Police Officer Fisher for the same conduct.  (Compl. ¶15.)

In response to the two arrests, Leone sought the advice and representation of Attorney Peter Gersten.  (See Def's Mem. in Supp. Ex. B) (Deposition of Peter Gersten).  After the commencement of the instant action, Attorney Gersten was subpoenaed by the Defendant.  (Def's Mem. in Supp. Ex. A) (Subpoena and Notice of Deposition directed to the Keeper of Records of Peter S. Gersten, Esq.).  Attached to the subpoena was a "Schedule A" which sought:

> 1.   Any and all file materials concerning the criminal arrests of Diane Leone for harassment and threatening of Carol Giardi, excluding documents protected by the attorney-client privilege; and
>
> 2.   Any and all correspondence, notes, e-mails, memos, records, transcripts, tape recordings, statements, evidence or other materials received or generated by you concerning the criminal arrests of Diane Leone for harassment and threatening of Carol Giardi, excluding documents protected by the attorney-client privilege.

(Id.)  Attorney Gersten appeared at the deposition at the time and date noticed, but refused to provide the materials requested to defendant's counsel claiming, "I did not bring those records as they are in my opinion within the scope of the attorney client privilege and/or work product doctrine and I do not feel that I can voluntarily release those without Court order."  (Def's Mem. in Supp. Ex. B.)

In response to Attorney Gersten's refusal to provide the requested documents, the defendant filed the instant motion.  On August 23, 2006, the undersigned temporarily granted in part and denied in part the motion.  (Dkt. #33.)  The effect of this ruling was to order Attorney Gersten to provide all of the materials responsive to defendant's subpoena to the undersigned for *in camera* review.  On September 7, 2006 Attorney Gersten complied with this order and delivered the documents to chambers.[1]

---

[1]

Attached to the file was a cover letter from Attorney Gersten. In relevant part, the letter says, "Pursuant to your recent Order, dated August 23, 2006, I am enclosing a copy of my file relating to the criminal arrests of the Plaintiff Diane E. Leone for those incidents involving Carol Giardi.  I have not included my personal notes and observations, if any, nor my invoice for legal services."
The court accepts Attorney Gersten's representations with respect to his "personal notes and observations" which are immune from discovery as opinion work-product as described further herein.

## II.   Standard

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Thus, a discovery request is objectionable under Rule 26(b)(1) if it requests information which is either irrelevant or privileged. While there are certainly other privileges, the attorney-client privilege is the most commonly asserted basis for a privilege objection to discovery. See 2 Stephen A. Saltzburg et al., Federal Rules of Evidence Manual 697 (7th ed. 1998).

The attorney-client privilege prevents disclosure of a communication from a client to a lawyer, where that communication

> relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on the law or (ii) legal services or (iii) assistance in some legal proceeding , and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

United States v. United Shoe Machinery Corp., 89 F. Supp. 357, 358 (D. Mass. 1950); Colton v. United States, 306 F.2d 633, 637 (2d Cir. 1962). The rationale behind the privilege is to foster open and honest communication between a client and his lawyer. United States v. Schwimmer, 892 F.2d 237, 443 (2d Cir. 1989). Because of this underlying rationale, communication running from the lawyer to the client is not protected unless it reveals what the client has said. SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 522 (D. Conn.

1976); Clute v. Davenport Co., 118 F.R.D. 312, 314 (D. Conn. 1988).

Though often confused with attorney-client privilege, the work-product doctrine protects decidedly different interests. The work-product doctrine, which was first articulated by the Supreme Court in Hickman v. Taylor, 329 U.S. 495 (1947), is now codified in the Federal Rules as follows:

> a party may obtain discovery of documents and tangible things otherwise discoverable...and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed. R. Civ. P. 26(b)(3). "The work-product doctrine...is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998)(internal quotations omitted).

As the rule itself makes clear, work-product enjoys only limited immunity from discovery. It is not a privilege, and the information contained in the work-product may be discoverable if the reasons in favor of discovery outweigh the concerns underlying the rule in the first place. How substantial the reasons must be in favor of discovering the work-product depends on the type of

work-product in question.  For "fact" work-product, that is work-product that does not contain legal opinions or conclusions, the party seeking discovery must meet the "substantial burden" and "undue hardship" tests outlined in Rule 26.  <u>Maloney v. Sisters of Charity Hosp.</u>, 165 F.R.D. 26, 30 (W.D.N.Y. 1995).  Opinion work product, on the other hand, constitutes thoughts, strategies, legal opinions and conclusions by an attorney.  <u>See</u> <u>Loftis v. Amica Mut. Ins. Co.</u>, 175 F.R.D. 5, 11 (D. Conn. 1997).  Opinion work-product is given stronger protection and is discoverable only in rare circumstances where the party seeking discovery can show extraordinary justification.  <u>Id.</u>; <u>S.N. Phelps & Co. v. Circle K. Corp.</u>, 1997 U.S. Dist. LEXIS 713, No. 96 CV 5801 (JFK), 1997 WL 31197, at *7 (S.D.N.Y. 1997).

With these standards in mind, the court has reviewed Attorney Gersten's entire file on Diane Leone.  The documents essentially break down into six categories which the court will discuss in turn.

### III.   <u>Discussion</u>

#### A.   <u>Letter from Gersten to Leone</u>

On April 27, 2003 Attorney Gersten addressed a letter to Diane Leone.  This letter is clearly privileged.  The letter references earlier communications from Leone to Gersten and suggests a legal course of action.  Because the letter reveals what the client has told the lawyer in confidence and for the purposes of obtaining

legal advice, <u>see</u> <u>Clute</u>, 118 F.R.D. at 314, the court finds that the letter is protected by the attorney-client privilege and is, therefore, not discoverable.

**B.    Substantive Correspondence**
**between Gersten and Philip Federspiel**

The file contains a number of emails between Attorney Gersten and Philip Federspiel, Diane Leone's husband.  At the outset, the court notes that had these correspondence been between Leone and Gersten they would be privileged.  The emails are confidential in nature and requested legal advice.  The question then is whether the conversations are privileged even though they are not between the attorney and a client, but between an attorney and the client's husband.

Where, as here, there is federal question jurisdiction, the court must apply federal common law with respect to attorney-client privilege.  Fed. R. Evid. 501.  Although the case law is scant addressing whether communication between an individual's representative and that individual's attorney is protected by attorney-client privilege, the case law focusing on conversations between corporate representatives and corporate attorneys is, fortunately, considerable.  <u>See e.g.</u>, <u>Upjohn Co. v. United States</u>, 449 U.S. 383 (1983).  The court, therefore, looks to these sources of authority to determine what the rule should be in this particular case.

Commentators suggest that Proposed Federal Rule of Evidence

503, otherwise known as Supreme Court Rule 503, outlines the federal common law on attorney-client privilege. 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 503.02 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2006) ("Supreme Court Standard 503 restates, rather than modifies, the common-law lawyer-client privilege.); United States v. (Under Seal), 748 F.2d 871, 874 n.5 (4th Cir. 1984) (Supreme Court Standard 503 provides "a comprehensive guide to the federal common law of attorney-client privilege); United States v. Spector, 793 F.2d 932, 938 (8th Cir. 1986) ("Although Congress did not adopt this rule, courts have relied upon it as an accurate definition of the federal common law of attorney-client privilege"); Viacom, Inc. v. Sumitomo Corp., 200 F.R.D. 213, 217 n.2 (2d Cir. 2001) (citing Weinstein's, (Under Seal), and Spector for the same proposition).

Supreme Court Rule 503, in pertinent part, states, "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself *or his representative* and his lawyer or his lawyer's representative." Weinstein & Berger, supra, § 503.01. Supreme Court Rule 503 does not define "representative of the client," because, as the Advisory Committee Notes suggest, "the matter is better left to resolution by decision on a case-by-case basis." Id. at § 503App.01.

-8-

While Supreme Court Rule 503 does not define "representative of the client," the Uniform Rules of Evidence does contain such a definition.

> 'Representative of the client' means a person having authority to obtain professional legal services, or to act on legal advice rendered, on behalf of the client or a person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in the scope of employment for the client.

Unif. R. Evid. § 502(a)(4). Many states have adopted the Uniform Rules of Evidence's definition of "representative of the client." Christopher B. Mueller and Laird C. Kirkpatrick, 2 <u>Federal Evidence</u> § 182 (2d ed. 2006).

While Supreme Court Rule 503 and the Uniform Rules of Evidence taken together may suggest that Mr. Federspiel is Ms. Leone's representative, the court's inquiry must go beyond these two authorities for two reasons. First, it is clear that the overwhelming majority of the common law in this area contemplates a corporate context. While individuals can speak for themselves, a corporation must speak through its representatives. <u>See</u> Edna Selan Epstein, <u>The Attorney-Client Privilege and the Work-Product Doctrine</u>, 99 (4th ed. 2001) ("Corporations can only speak through authorized representatives. Individuals, as a general rule, cannot, but must confide in an attorney personally").

Second, in those instances where courts have addressed whether attorney-client privilege protects communication between an

individual client's representative and the client's attorney, they appear to have required a showing that the representative's communication was either necessary or could not have been made by the client alone. For example, in Hendrick v. Avis Rent a Car Sys., Inc., 944 F. Supp. 187 (W.D.N.Y. 1996) the court, applying New York privilege law, addressed the question of whether attorney-client privilege protected the communication between the parents of a college student involved in a life-threatening accident and that student's attorney. The court considered the necessity of the communication dispositive, "The record before me is clear that plaintiff's injuries and the comprehensive medical intervention necessary to treat those injuries inhibited plaintiff from independently seeking legal counsel. It is both logical and reasonable that his parents would act as his agent in this important task." Id. at 189.

Similarly, in Gerheiser v. Stephens, 712 So.2d 1252, 1254 (Fla. App. 1998) the court found a mother's communication with her son's attorney privileged because the son was incarcerated and requested that his mother find him legal counsel. Further support for this analysis is found in Grubbs v. K Mart Corp., 411 N.W.2d 477 (Mich. Ct. App. 1987) which held that the communication between the parents of a minor child and the child's attorney were privileged. The court there stated, "It is apparent that [the plaintiff] who was approximately nine years old at the time, was

not able to bring suit in her own name.  We believe that [the plaintiff's] parents were, of necessity, acting as her agents in seeking legal advice."  Id. at 480.

Connecticut courts also require necessity, noting that, "the presence of certain third parties...who are agents or employees of an attorney or client, and *who are necessary to the consultation*, will not destroy the confidential nature of the communications. Olson v. Accessory Controls & Equip. Corp., 757 A.2d 14, 22 (Conn. 2000) (emphasis added).  Thus, for example, the use of interpreters does not destroy the privilege.  Id. at 23; see also People v. Osorio, 549 N.E.2d 1183, 1186 (N.Y. 1989).  Likewise, New Jersey requires that the third party's presence be necessary for the privilege to survive.  State v. Blacknall, 760 A.2d 1151, 1153 (N.J. Super. Ct. Law Div. 2000); see also Hoffman v. Conder, 712 P.2d 216, 216-17 (Utah 1985) ("The proper standard is whether the third person's presence is reasonably necessary under the circumstances").  Finally, in State v. Rhodes, 627 N.W.2d 74 (Minn. 2003) the court held that the presence of a client's wife while consulting a divorce attorney destroyed the attorney-client privilege protection because the husband was the real client and the wife's presence was unnecessary.  Id. at 85.

The court is cognizant of the fact that the authority cited herein is not federal and, thus, not binding.  However, in the absence of any authority in this circuit or, for that matter, any

other circuit, this court may look to authoritative state court decisions applying similar evidentiary standards to formulate the law that should apply in this district.  After throughly reviewing all of the relevant law on the matter, the undersigned finds that the better rule to adhere to in this district is as follows: Communication between an individual client's representative and that client's lawyer will be afforded attorney-client privilege protection only if the information communicated is: (1) related to the subject matter of the underlying attorney-client relationship; (2) necessary to effectuate the representation; and (3) could not have been communicated by the client herself.

Applying this rule to the present case, the court finds that Mr. Federspiel's emails are not protected by the attorney-client privilege.  While the correspondence undoubtedly relates to the subject matter of the Gersten-Leone attorney-client relationship, the emails do not appear necessary to effectuate that representation, nor does it fairly appear that Diane Leone could not have communicated the information herself.  Thus, as to the emails between Gersten and Federspiel, the defendant's Motion to Compel is GRANTED.  The emails are ORDERED disclosed.

## C.  **Emails Regarding Billing Dispute**

The file also contains emails between Federspiel and Gersten which indicates a billing dispute.  For the reasons stated above, these emails are not protected by attorney-client privilege.

-12-

However, the court finds that the information is not discoverable because it is manifestly irrelevant to the claims of either party and could not reasonably lead to the discovery of relevant information. Fed. R. Civ. P. 26(b)(1). Thus, for the document's described herein, defendant's Motion to Compel is DENIED.

**D.   <u>Medical Documents</u>**

Attorney Gersten's file also contains two letters from one of plaintiff's doctors. The court finds that plaintiff's medical history is not relevant to any claim or defense of any party in this case. The defendant's Motion to Compel on this point is DENIED.

**E.   <u>Documents Regarding Dispute with CCSU</u>**

As discussed earlier, Leone sought legal assistance from Gersten not only for the arrests, but for the issues involving her on-going dispute with CCSU. Much of the file contains documentation of this dispute. These documents do not contain any record of conversations between Leone and Gersten. Nor do the documents represent any of the mental impressions or strategies of Attorney Gersten. In fact, it appears that the documents are all authored by CCSU administrators or staff. The documents, therefore, are neither privileged nor immune from discovery. Since they are arguably relevant, the motion is GRANTED as to them.

**F.   <u>Arrest Related Documents</u>**

Finally, the file contains a number of arrest-related

documents.  These documents include, among other things, the arrest report, the application for arrest, several supporting affidavits and an appearance bond.  These records were automatically erased pursuant to Conn. Gen. Stat. § 54-142a(c).  Thus, these may be the only available copies of the records.

The arrest-related documents are not protected by the attorney-client privilege.  None reveals any communication from the plaintiff to her lawyer.  Further, the documents appear relevant since the primary issue here is whether the plaintiff was, in fact, arrested twice for the same conduct.  Therefore, the Motion to Compel these documents is GRANTED.

## IV.   Conclusion

Based on the foregoing, the defendant's Motion to Compel is **GRANTED** in part and **DENIED** in part.  The documents ordered disclosed will be maintained in the undersigned's chambers for 20 days from this date.  Defendant's counsel will contact chambers to arrange a time to pick up the documents.  The clerk is directed to mail a copy of this ruling to Attorney Peter S. Gersten, 75 North Main Street, P.O. Box 27-1458, West Hartford, CT 06127.

This is not a recommended ruling.  This is a discovery ruling and order reviewable pursuant to the "clearly erroneous" standard of review.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 6(a), (e) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges.  As such, it is an order of the court.  See 28 U.S.C. §

636(b)(written objections to ruling must be filed within ten days after service of same).

**IT IS SO ORDERED.**

   **Dated at Hartford, Connecticut this 18ᵗʰ day of October, 2006.**

                                    **/s/ Thomas P. Smith**
                                    **Thomas P. Smith**
                                    **United States Magistrate Judge**